RUSSELL, Judge.
Donna Simmons (employee) filed a complaint against Champion International Corporation (employer) in this workmen’s compensation action, alleging that she was injured on August 27, 1988, while working in the line and scope of her employment. After an ore tenus proceeding, the trial court issued an order holding that the employee “failed to show that her condition for which she claims benefits was due to an accident with resulting injury sustained on the date complained of.” It then denied her claim for workmen’s compensation benefits. The employee appeals. We affirm.
At the outset we note that the standard of review for this court in a workmen’s compensation case is a two-step process. First we must determine if the trial court’s findings are supported by any legal evidence; then we must determine whether a reasonable view of such evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). In addition, we note that the only injuries that are compensable under the workmen’s compensation act are those caused by an accident arising out of and in the course of the employee’s employment. § 25-5-51, Ala.Code 1975; J.C. Penney Co. v. Pigg, 544 So.2d 169 (Ala.Civ.App.1989).
It is well settled that the employee has the burden of proving that the accident and her injuries arose out of her employment. Knighten v. Bratcher, 586 So.2d 14 (Ala.Civ.App.1991). Furthermore, the trial court may interpret evidence that is in conflict according to its own best judgment. Id.
The record reveals that the employee began working for the employer in 1979 in a number of jobs, all of which involved manual labor. The employee suffered from back problems beginning in 1977, when she was injured in an automobile accident. She also had other incidents which involved injury to her back, including *329 one that occurred in January 1988, when she was sanding at work and injured her back. Dr. Zeigler, a neurosurgeon, performed back surgery on her that same month.
The employee testified that she missed work two to three months a year while employed by the employer and that, prior to the date of the alleged accident and injury that is the subject of this action, she missed twenty-six out of fifty-two weeks of work because of her back. The employee also testified that she was able to iron, vacuum, mop, and pick up her daughter subsequent to the surgery. She further stated that when she was allowed to return to work in the middle of June, she was “feeling good.”
Her treating physician, Dr. Chandler, saw the employee in July 1988 and stated that the employee was feeling “pretty good” and that she had a little pain in her left leg.
On July 27, 1988, the employee, while at work, climbed on a machine and began sanding. She testified that she was leaning over the machine holding the sander with one hand and holding on with the other hand when she felt a bad pain. She then told the other employee who was working with her that she couldn’t “do this,” that her back was killing her, and that she was going to “medical.” Dr. Chandler testified that she came into the emergency room that day “upset and crying, agitated and depressed” and that she was having severe, acute low back pain. She was hospitalized for approximately three days and then was treated for depression at another hospital for five days. Dr. Chandler opined that the employee “acutely” hurt her back while bending over at work and that the injury was the cause of her pain and depression. In addition, Dr. Chandler’s notes indicated that on February 14, 1989, Dr. Zeigler thought that this was a new injury that was causing problems.
Dr. Hofammann, an orthopedic surgeon, examined the employee on May 17, 1990. He ordered specific tests performed and saw her again on May 24. He stated that she had a mild lumbar dysfunction, or postoperative back pain, which he felt was the result of her back surgery and being out-of-shape.
The employee filled out a pre-employment medical questionnaire in 1979 and answered that she had not had a previous injury to her back and had not had previous back trouble. However, the employee testified under questioning that she had been in the hospital for eight or nine days following the automobile accident in 1977. She further testified that she missed two or three months of work a year.
The record indicates that the employee had other back problems prior to August 27, 1988:
1. She was admitted to the hospital from July 16 to July 19, 1977, and treated for injuries received in an automobile accident. The diagnosis was acute neck and back strain.
2. She was admitted to the hospital from March 21 to March 29, 1982, for severe lower back pain which radiated to the left leg.
3. She spent four days in the hospital while being treated for acute lumbosacral strain from August 5 to 9, 1982.
4. She was admitted to the hospital from October 28 to November 1, 1984, because she had to crawl to get around at home and could not get up and down due to severe back pain. She had picked up a six-week-old baby and felt a catch in her lower back and pain when she put weight on her left leg.
5. She was admitted to the hospital and released on August 24, 1987, suffering from severe lumbosacral pain radiating to both hips and down the legs. The diagnosis was severe low back pain with possible disc disease.
A co-worker testified that after trying to sand on the machine, the employee stated that “she wasn’t able to do it and she was going to medical.” He did not believe that the employee was crying or upset when she left. This was the first time the employee had sanded since she returned to work at the end of June.
*330 On admission to the hospital after the alleged injury, the employee stated that she “can’t handle it anymore.” She was depressed and questioning the reason to live. The diagnosis after hospitalization was major depression with chronic pain. The history was chronic pain for eight years and increasing depression for four to six months.
Dr. Chandler testified that the employee told him on the day of the alleged accident that she was afraid that, if she attempted to work where she had hurt herself before (sanding), she might suffer additional injuries. He further testified that, on September 9, 1988, thirteen days after the alleged accident, the employee was having a lot less depression, that her back had returned to the same condition in which it had been prior to the back sprain on August 27, 1988, and that radiological tests were “essentially normal or the same as they had been.” A report from the Alabama Pain Clinic on July 5, 1989, indicated that “pending litigation and increased attention and support from family suggest the possibility of secondary gain for her pain condition.”
Dr. Chandler and Dr. Zeigler recommended that the employee lose weight. Instead, she gained twenty-five to thirty pounds. Dr. Chandler recommended the loss of seventy-three pounds and admitted that the excess weight is a factor affecting her back condition. Tests performed after the incident revealed no evidence of a recurrent herniated disc since surgery.
Dr. James Broom, the psychiatrist who treated the employee after the alleged accident, testified that the employee told him that she was not going to injure her back like she did before and go through another seven years of hell and back pain. She had a “reliving” of this happening to her again, and then she came to the emergency room.
The person who handles the employer’s workmen’s compensation claims testified that he was not notified of an accident until the receipt of suit papers. Because the employee had over one hundred medical visits, it was assumed that the incident was a continuation of previous problems.
The employee contends that her injuries were caused by an accident that arose out of her employment. Admitting her previous history of back problems, she nonetheless claims that a workmen’s compensation award is not affected by pre-existing conditions and diseases if the job-related injury and the pre-existing condition together produce the disability. Associated Forest Materials v. Keller, 537 So.2d 957 (Ala.Civ.App.1988).
However, in view of the evidence outlined above, we cannot say that there was a job-related injury that contributed to the disability or that the trial court’s judgment was unsupported by the evidence. Furthermore, a reasonable view of the evidence supports the trial court’s holding, and our limited standard of review requires that we affirm the trial court’s judgment.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.